## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JASON ROBINSON,** §<br>§<br>§<br>*Plaintiff,* §<br>§<br> §<br>**v.** §<br>§<br> §<br>**SANDBOX TRANSPORTATION, LLC,** §<br>**a Texas Limited Liability Company,** §<br> §<br>*Defendant.* §<br>§<br>§ | Civil Action No. ___CIV-20-484-G___<br><br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT

Plaintiff Jason Robinson (hereinafter "Robinson" or "Plaintiff") brings this action individually against Defendant SandBox Transportation, LLC, (hereinafter "SandBox" or "Defendant"). This is a case for religious discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

## I.
## OVERVIEW

1.    This lawsuit seeks to recover back pay, front pay, compensatory damages, punitive/exemplary damages, attorneys' fees, expert witness fees, costs, pre-judgment and post-judgment interest and other forms of relief pursuant to the provisions of Title VII.

2.    Plaintiff is a practicing Muslim and has been since approximately 2002.

3.    After learning of Plaintiff's religious beliefs on September 23, 2019, SandBox requested Plaintiff (for the first time in his entire employment) to completely shave his beard. Completely shaving his beard goes against Plaintiff's sincerely held religious beliefs.

4.    SandBox did not enforce this policy against Plaintiff until SandBox learned Plaintiff was a practicing Muslim.

5.      Nor did SandBox enforce this policy against other non-Muslim employees similarly situated to Plaintiff.

6.      Sandbox further refused to accommodate Plaintiff's sincerely held religious beliefs by refusing to allow him to continue using the full facial, OSHA approved, mask he had been using to comply with SandBox's safety standards.

7.      SandBox also refused to allow Plaintiff to work in any other position where a mask was not required, despite numerous openings.

8.      When Plaintiff refused to go against his sincerely held religious beliefs, SandBox terminated Plaintiff.

9.      Plaintiff has been discriminated against on the basis of his sincerely held religious beliefs and therefore seeks redress under Title VII.

## II.
## THE PARTIES

10.      Plaintiff Jason Robinson ("Robinson") worked for SandBox within the relevant time period.

11.      SandBox Transportation, LLC ("SandBox") is a Texas limited liability company and may be served through its registered agent for service of process: **The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.**

## III.
## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 621 and 42 U.S.C. § 2000e.

13.      This Court has personal jurisdiction over SandBox because the cause of action arose within this District as a result of SandBox's conduct within this District.

14.     Venue is proper in the Western District of Oklahoma because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

15.     Specifically, SandBox maintains a working presence in Oklahoma City, Oklahoma, and Plaintiff Robinson worked in Oklahoma City, Oklahoma throughout this employment with SandBox, all of which is within this District.

16.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

17.     Plaintiff has complied with all conditions precedent to filing a suit under Title VII.

18.     Plaintiff filed his Charge of Discrimination within three hundred (300) days of the discriminatory action.

19.     Plaintiff's charge gave notice to SandBox of the alleged discriminatory actions.

20.     Plaintiff received his EEOC Form 161 Notice of Rights letter on May 11, 2020.

21.     Plaintiff filed his complaint within ninety (90) days of receipt of the Dismissal and Notice of Rights issued by the EEOC.

## III.
## COVERAGE

22.     SandBox transacts business in the Western District of Oklahoma.

23.     At all material times, SandBox has been an "employer" under Title VII, as set forth in 42 U.S.C. § 2000e(b).

24.     Plaintiff was SandBox's employee within the definition as set forth in 42 U.S.C. § 2000(f).

25.     At all material times, SandBox has had more than fifteen (15) full-time employees.

## IV.
## STATEMENT OF FACTS

26.     SandBox is a trucking company headquartered in Houston, Texas, and provides local

sand, rock, gravel, and asphalt hauling and delivery services to the oil and gas industry throughout the

United States.[1]

27.     SandBox's primary service is the coordination of drilling sand and other materials into

the oilfields throughout the United States.

28.     Plaintiff was hired by SandBox in Oklahoma City, Oklahoma on December 6, 2017 as

an Operator.

29.     Plaintiff's job consisted of "running the sticks" – that is, running the frac sand from

its box.

30.     When hired, Plaintiff trimmed but did not shave his beard, and was able to pass the

half-mask fit test.

31.     Prior to being hired, Plaintiff knew several employees at SandBox who had beards and

facial hair and Plaintiff did not believe he would be required to be clean shaven.

32.     A "fit" test is defined by the Occupational Safety and Health Administration

("OSHA") and is stated in 29 C.F.R. § 1910.134(b) as "the use of a protocol to qualitatively and

quantitatively evaluate the fit of a respirator on an individual."

33.     The fit test ensures the breathing mask used by an individual will seal to their face and

prevent harmful particulates from being inhaled.

34.     Plaintiff was never told to shave and never did shave after his hire date.

35.     Plaintiff typically worked on a four-man crew and would help move frac sand at well

sites.

---

[1] http://www.sandboxlogistics.com/sandbox_process.php.

36.     Plaintiff was not a forklift driver.

37.     At times, Plaintiff also worked in the yard in Oklahoma City, Oklahoma.

38.     Employees who work in the yard are not required to wear masks and may have beards.

39.     During his employment, Plaintiff worked at several well sites across the United States, including locations in Pennsylvania, Texas, and Oklahoma.

40.     In approximately June 2018, Plaintiff requested permission to wear his own breathing mask that would cover his beard and comply with both OSHA and SandBox's own safety standard.

41.     Terence Taku ("Taku"), one of Plaintiff's supervisors, approved Plaintiff's request in June of 2018.

42.     Plaintiff purchased his own mask and began wearing it after passing the "fit" test.

43.     From June 2018 until May 2019, Plaintiff purchased and wore nine to ten different breathing masks while working for SandBox. At no point during this period did SandBox ever disapprove of Plaintiff's breathing masks.

44.     While on site in Pennsylvania in approximately May 2019, one of Plaintiff's coworkers suggested that he purchase and wear a full-face respirator which would cover Plaintiff's entire head (including his beard).

45.     Plaintiff then purchased and began to wear a 3M Versaflo Respiratory Hard Hat Assembly M-307, with Premium Visor and Faceseal, 1 EA/Case ("M-307").

46.     The M-307 is a loose-fitting full facepiece with an Assigned Protection Factor ("APF") of 25.

47.     29 C.F.R. § 1910.134(b) defines APF as a "respirator with an air-purifying filter, cartridge, or canister that removes specific air contaminants by passing ambient air through the air-purifying element."

48.     Most half-mask tight-fitting respirators, such as the ones supplied by SandBox to its employees, have an APF of 5 to 10.

49.     According to 29 C.F.R. § 1910.134(f), only tight fitting facepieces must undergo fit testing, as loose-fitting respirators do not depend on a tight seal with the face to provide protection.[2]

50.     Under OSHA standards and relevant federal regulations, the M-307 mask worn by Plaintiff did not need to undergo fit testing because it does not require a face to skin seal.

51.     Starting in approximately June or July of 2019, Dale Cross ("Cross"), Plaintiff's Field Supervisor, began asking Plaintiff if he would be willing to work in the yard/guard shack instead of out in the field as Plaintiff had been doing.

52.     Cross continued to ask Plaintiff to take the alternative job up until the last week of Plaintiff's employment on September 30, 2019.

53.     On or about September 23, 2019, Rick Paciorek ("Paciorek"), a Regional Manager of SandBox, performed a safety audit at Plaintiff's well site.

54.     While on site, Paciorek asked Plaintiff why his beard was long.

55.     Plaintiff informed Paciorek that it was against his Islamic faith to shave his beard.

56.     Paciorek did not ask Plaintiff any more questions and did not tell Plaintiff to shave.

57.     Paciorek did not require or ask any of Plaintiff's coworkers to shave either, despite the fact that several had beards or stubble.

58.     The next day, Plaintiff worked his normal shift, without any problems.

59.     According to SandBox's position statement to the EEOC, Paciorek informed Cross of his entire discussion with Plaintiff, including that Plaintiff was not shaving as it was against his religion.

---

[2] https://www.osha.gov/video/respiratory_protection/resptypes_transcript.html

60.     Cross contacted Plaintiff and told him he would need to completely shave.

61.     Plaintiff trimmed his beard within an amount allowed by his sincerely held religious belief.

62.     According to SandBox's own position statement, Plaintiff trimmed where the M-307 mask met skin.

63.     Later that week, Plaintiff was called to a meeting with Cross, Taku, and Kevin Brown ("Brown"), SandBox's Regional Human Resources Manager.

64.     At the meeting, Plaintiff was informed by the Cross, Taku and Brown, that despite his Muslim faith, he was going to have to be completely clean shaven if he wished to continue his employment with SandBox.

65.     Plaintiff informed Cross, Taku and Brown that he could not do that, but his M-307 full face respirator completely protected him according to OSHA standards.

66.     Cross, Taku and Brown claimed Plaintiff's mask could not pass a fit test, despite the fact such testing does not apply to masks such as the M-307.

67.     SandBox never tested Plaintiff's M-307 mask in any way to see if it offered adequate protection, nor did SandBox inquire about its OSHA certification.

68.     Plaintiff then stated that if he would not be allowed to work on site even with his approved mask that he be allowed to work in the yard or work in the position Cross had been offering him for the past three months.

69.     Plaintiff expressed he was willing to take a pay cut and/or move in order to stay employed with SandBox.

70.     At that time, SandBox had numerous openings and was looking to hire new employees for positions across the United States—several of those positions were not subject to the shaving policy.

71.     Taku told Plaintiff he would not be allowed to work that position and that there were no other positions available in the entire company.

72.     Taku told Plaintiff he could either shave completely or he would be fired.

73.     No other employees who had facial hair (and were subject to SandBox's facial hair policy) were required to shave or face termination like Plaintiff.

74.     Prior to telling Paciorek his sincerely held religious beliefs, Plaintiff had never been asked to shave in the two years that he worked at SandBox.

75.     Prior to September 30, 2019, Plaintiff called SandBox to see if any other position were open for him that would not require him to shave. Plaintiff was told there were no available positions.

76.     Plaintiff had performed his job competently and did not have any write ups or disciplinary action pending against him.

77.     On September 30, 2019, SandBox terminated Plaintiff's employment.

78.     According to SandBox's EEOC position statement, states that because Plaintiff's respirator "did not allow for a tight seal" and his beard did not comply with the clean-shaven policy, he was terminated. This is despite the fact Plaintiff's mask does not require a tight seal to work, as stated by OSHA's regulatory standards. Nor did SandBox ever test to see if Plaintiff's M-307 full face respirator met their safety requirements.

79.     The week after Plaintiff's termination, Plaintiff communicated with numerous former coworkers who stated SandBox was hiring yard hands and that they still had been unable to fill the position Cross had been offering to Plaintiff for months.

80.     SandBox actively engaged and intentionally discriminated against Plaintiff in violation of Title VII by, among other things, enforcing a policy against Plaintiff and not against other employees who broke with that policy, and failing to provide a reasonable accommodation to Plaintiff's sincerely held religious beliefs.

81.     Accordingly, SandBox's actions were (and continue to be) in violation of Title VII.

## V.
## CAUSES OF ACTION

### COUNT ONE
### (Religious Discrimination in Violation of Title VII)

82.     All previous paragraphs are incorporated as though fully set forth herein.

83.     SandBox violated 42 U.S.C. § 2000e-2, by:

   a.   Discharging Plaintiff due to his religion;

   b.   Using an employment practice that caused a disparate impact on the basis of
        Plaintiff's religion;

   c.   Enforcing a policy against Plaintiff, only after learning of Plaintiff's religion, and
        not enforcing that policy against other employees who were also in violation of
        the policy; and

   d.   Failing to provide any reasonable accommodation despite not being subject to
        undue hardship.

84.     Title VII prohibits employment discrimination on the basis of religion.

85.     SandBox's conduct, described herein, constitutes illegal, intentional discrimination and
disparate treatment under 42 U.S.C. § 2000e *et. seq.*

86.     SandBox committed the above-alleged acts with malice or reckless indifference to the
federally protected rights of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

87.     As a result of SandBox's violations of 42 U.S.C. § 2000e *et seq.*, Plaintiff has suffered
past and present loss of income and other employee benefits, mental anguish, emotional distress,
humiliation, loss of reputation and other damages in an amount in excess of $75,000.

88.     Plaintiff is also entitled to attorneys' fees and costs incurred in connection with this
claim.

## VI.
## RELIEF SOUGHT

89.     Plaintiff respectfully prays for relief against SandBox as follows:

a.      For a declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*;

b.      For a permanent injunction against SandBox, and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the unlawful policies, practices, customs, and usages set forth herein, and requiring SandBox to take affirmative steps to ensure that the company does not engage in the same or similar violations of employees' rights under these laws in the future;

c.      For an Order awarding Plaintiff front and back wages that have been improperly withheld; lost wages, benefits, and other employee benefits as sought herein; damages for pecuniary and nonpecuniary losses; and compensatory damages and punitive damages for distress suffered by Plaintiff, together with pre-judgment and post-judgment interest thereon at the maximum rate allowed by law;

d.      For an Order awarding Plaintiff the costs of this action;

e.      For an Order awarding Plaintiff attorneys' fees;

f.      For an Order awarding Plaintiffs pre-judgment and post-judgment interest at the highest rates allowed by law;

g.      For an Order for front pay benefits to Plaintiff in lieu of reinstatement;

h.      For an Order granting such other and further relief as may be necessary and appropriate.

Date:   May 26, 2020

                              Respectfully submitted,

                              ANDERSON ALEXANDER, PLLC

               By:      /s/ Clif Alexander
                              **Clif Alexander** (*Pro Hac Vice Anticipated*)
                              Texas Bar No. 24064805
                              clif@a2xlaw.com
                              **Lauren E. Braddy** (*Pro Hac Vice Anticipated*)
                              Texas Bar No. 24071993
                              lauren@a2xlaw.com
                              **Carter T. Hastings** (*Pro Hac Vice Anticipated*)
                              Texas Bar No. 24101879
                              carter@a2xlaw.com
                              819 N. Upper Broadway
                              Corpus Christi, Texas 78401
                              Telephone: (361) 452-1279
                              Facsimile: (361) 452-1284

                              MCINTYRE LAW, P.C.

               By:      /s/ Noble K. McIntyre
                              **Noble K. McIntyre**
                              Oklahoma Bar No. 16359
                              noble@mcintyrelaw.com
                              8601 S. Western Avenue
                              Oklahoma City, Oklahoma 73139
                              Telephone: (405) 917-5250
                              Facsimile: (405) 917-5405

                              ***Attorneys for Plaintiff Robinson***